Argued October 8; modified December 15, 1931; rehearing
denied April 5, 1932

# CHARLES K. SPAULDING LOGGING CO. *v.*
# RYCKMAN ET AL.
# INTER STATE FIDELITY BUILDING & LOAN
# ASS'N *v.* PUTNAM ET AL.

(6 P. (2d) 25)

*Clarence Butt,* of Newberg, and *Robt. F. Maguire* and *Normal Kuykendall,* both of Portland (Winter & Maguire, of Portland, on the brief), for appellant.

*E. K. Oppenheimer,* of Portland (Wilbur, Beckett, Howell & Oppenheimer and A. H. Lewis, all of Portland, on the brief), for cross-appellant.

*Edward J. Clark,* of Portland (S. Fred Wilson, of Portland, on the brief), for cross-appellant on its own appeal.

*R. H. Bassett,* of Salem, for respondent Nelson Bros.

 RAND, J. The Chas. K. Spaulding Logging Company commenced this suit, seeking to enforce a lien for lumber and material furnished to the defendants Ryckman and wife for use in the construction of an apartment house then owned by them. Nelson Bros., Inc., also claimed a lien against the building for labor and material furnished. It answered the complaint, setting up its lien and praying for its foreclosure. During the course of construction, Ryckman and wife mortgaged the building and premises to the Inter State Fidelity Building and Loan Association, hereinafter referred to as the Loan Company, and later sold and conveyed the premises to the defendant Susan Martin. The owners defaulted by failing to pay certain stipulated interest instalments and, under an acceleration clause, all sums payable under the mortgage had become due and collectible. The Loan Company jointly

with the Ryckmans and Martin answered, denying the validity of plaintiff's lien and setting up the mortgage and praying that it be foreclosed, and, in another answer, the Loan Company denied the validity of the lien of Nelson Bros., Inc. The two other defendants failed to appear and are in default. The cause was tried and a decree entered in the court below foreclosing the mortgage and the lien of Nelson Bros., Inc., but refusing to foreclose plaintiff's lien, holding it to be invalid and unenforceable. From that part of the decree so holding, plaintiff appealed. The Loan Company also appealed from that part of the decree foreclosing the lien of Nelson Bros., Inc., and now contends that the lien is invalid and, therefore, is not entitled to priority over the mortgage.

Hence, the sole question for decision is: Are both or either of the liens valid?

The objection to the validity of plaintiff's lien grows out of the following admitted facts: The plaintiff's claim of lien was properly prepared and verified and contained a true statement of plaintiff's claim. It was filed for record and a part of the filing fee paid within the time allowed by law, but the balance of the fee was not paid and the claim was not recorded until after the expiration of the time fixed for the filing of the same. It is contended that, under these circumstances, the lien is invalid.

The only competent evidence, the testimony offered by the county clerk being purely hearsay and incompetent, was that of the deputy county clerk who received the instrument and indorsed it as filed and accepted a part of the filing fee. In respect to this matter, she testified that she first saw the instrument on May 8, 1929, when it was presented and left with her for fil-

ing by Houser, the sales manager of plaintiff. In detailing the transaction which then occurred, she says:

"I expect I asked if he wanted to have it filed and recorded, I usually do, I can't say what I said to him; he wanted to know how much the recording fee was, and I said I would have to figure it up, and he said he believed he wouldn't wait, but I should file it, and I said I would figure it first anyway, as I remember it, and when he did let me know, I would remember it, which I did. He paid 50 cents filing fee and I filed it as I do any instrument."

She further testified that after filing the paper, she placed it with other chattel liens in the office where it remained unrecorded until July 15, 1929, when the balance of the filing fee, amounting to $7.70, was paid and the lien was recorded. The law requires that liens of this character shall be both filed and recorded: Sections 51-105 and 51-106, Oregon Code 1930. Under the first section, the time in which the claim of lien must be filed for record is fixed and unless so filed for record within the time prescribed the right to a lien is lost, but after it has been filed for record, the duty of recording it rests upon the county clerk, who alone is charged with the duty of its performance. The question, therefore, is whether a claim of lien filed within the time allowed is invalidated by reason of the fact that only a part of the filing fee was then paid, the amount being then unknown and the balance having been paid after the time for filing had expired. Section 27-3013, Oregon Code 1930, prescribes that the fees for filing and recording an instrument of this character "shall be collected in advance * * * and none of the services therein mentioned shall be rendered until the fee therefor has been paid to and received by the officer; and said officer shall enter

an account of the fees provided for by this act in books kept in his office, and pay all such fees to the treasurer of the proper county each day for the use and benefit of such county.'' It is clear from these provisions that, since the fee for the filing of this instrument was paid in part only, the authority for the filing of the instrument did not exist and the act done in respect thereto is nugatory unless the effect of this provision is overcome by some other section of the code. But section 27-3022 provides that ''if the officers named in section 27-3021 [the county clerk is one of the officers so named] neglect or fail to collect in advance all fees * * * which by the provisions of this act are to be paid to the county treasurer of said county, such officers shall be held liable on their official bond for the amount so remaining uncollected, and such amount shall be deducted from the salary of the officer failing to collect or pay the same over.'' It will be noted that under the provisions of the section last quoted, this section neither expressly nor impliedly prescribes that if the fee is not paid in advance the officer shall not act or that if he does so act the thing done is to be of no force and effect. On the contrary it prescribes that if he acts in a matter where a fee is chargeable therefor and which when paid belongs to the county, he and his bondsmen become personally responsible to the county for the payment of the fee which should have been collected in advance. Now, it must be obvious that no officer can collect or be responsible to the county unless some service upon his part has been performed or undertaken and, under the provisions of this section, there can be no fee payable to the county unless some official act has been done or some service performed or undertaken by such officer and clearly, if an act was done before the fee

had been paid, if the action taken was illegal and void and was to be of no force or effect, then the county could have no just claim to the uncollected fee and it is not supposable that the legislature intended that payments should be made by the clerk or his bondsmen for the doing of some act by an officer unless that act, when done, was to have some force and effect. Hence, when both sections of the statute are considered together and effect given to all their provisions, it would seem to follow that the filing and recording of an instrument in a case where the fee therefor was not collected in advance would not be a mere nullity nor render the act of filing and recording of such instrument a mere nullity, but that said acts were to have the same force and effect as if the fee had been collected in advance and before the service had been performed. Particularly, we think this is so where a part of the fee was paid before any of the services were performed and the balance of the fee has since been paid. It is clear from the testimony of the officer to which we have referred that, in taking this instrument and filing it for record, Houser intended to make a valid filing and it must be presumed, in the absence of any testimony to the contrary, that when he asked the amount payable therefor, he was prepared and intended to pay the entire amount and that he would have done so if that amount had been known at that time.

There is no provision in any statute fixing any definite amount for the recording of a mechanic's lien. The statute provides that the amount shall depend upon the number of folios contained in it and defines a folio as one hundred words, counting each two figures as one word: Section 27-3038. The charge fixed for recording such an instrument is twenty cents

for each folio. This lien contained an itemized statement of lumber sold for an aggregate price of $5,296.67, upon which certain credits had been given, reducing the amount of the claim to $3,857.65. The charge finally ascertained and paid for the filing and recording of this instrument was $8.20. If this amount was correctly computed, the lien contained forty or more folios of words, counting two figures for one word. From this it is clear that the amount of the fee could not be fixed without an actual count and a computation based thereon. Hence, under the circumstances stated, it was the duty of the county clerk, when this paper was presented for filing, to make the count and compute the charge and exact payment in full in advance and if such payment was not made to then decline the custody of the paper and declare the grounds of his refusal as held in *McDonald v. Crusen,* 2 Or. 258. Had that been done, the whole fee presumably would have been paid, but instead of doing so the officer accepted the custody of the paper and placed it in the files of the office after having indorsed it as filed over the signature of the county clerk and her own, and subsequently, when the amount had been ascertained, accepted payment in full and recorded the instrument. Having accepted the custody of the paper and a part of the fee, we think it was the duty of the clerk to record the instrument without delay and to look to Houser for the remainder of the fee, and if not paid by Houser, to himself become responsible for and pay the county the uncollected part of the fee.

The fact that the instrument was not recorded until after the time for filing had expired, we do not deem to be of much importance. Instances may arise, and probably do, where a number of liens of this character are filed in the office of the county clerk during the

last hour of the last day of filing and which of necessity cannot be recorded before the next succeeding day. It is clear that in a case of that kind, the claim of lien would not be defeated because not recorded until after the time for filing had expired.

In support of its contention that this lien is invalid, the Loan Company cites *Hilts v. Hilts,* 43 Or. 162 (72 P. 697), and *Hart v. Prather,* 61 Or. 7 (119 P. 489), and contends that this question is foreclosed by those decisions. Both those decisions are based upon an entirely different section of the statute and relate to the filing of a transcript upon appeal. Both cases were governed by section 29-106, Oregon Code 1930, which prescribes the amount of the filing fee for filing a transcript upon appeal. This amount is definite and certain and the same filing fee is applicable alike in all cases. Other provisions of the same section makes it the duty of the clerk of the court receiving the paper for filing to exact payment of the filing fee in advance and expressly provides that: "No * * * transcript on appeal * * * shall be filed therein until such payment is made." That section has no application to the filing and recording of the paper involved here. Therefore, those decisions are not conclusive upon this appeal. Here, we have two sections of the statute, each being a part of the same act, the one requiring payment in advance and directing that the services shall not be performed unless the fees therefor have first been paid, and the other providing, in effect, that if the services are performed in violation of the provisions of the first statute, then the officer performing them shall himself become responsible for the uncollected fee, and there is no express provision in the latter section that an act done in violation of the first statute shall be invalid or void. Hence, we hold in accordance with what we believe to

be a reasonable construction of the provisions of the two sections, that although it was the duty of the officer to refuse to accept this instrument for filing until the entire fee had been paid, yet by his accepting and filing it and placing it among his files, thereby making himself personally liable for the uncollected part of the fee, his filing of it was not a mere nullity and did not operate to make the subsequent recording of it after the balance of the fee had been paid invalid or defeat the existence of the lien, since the rights of no innocent purchaser or subsequent lienor without notice are involved in the case.

The lien claimed by Nelson Bros., Inc., is in part based upon the performance of labor and the furnishing of material under a special contract, which was entered into on December 10, 1928, between Ryckman and the lienor. In and by the terms of the contract, the lienor agreed to install a heating system in the building for the sum of $2,480, for which Ryckman agreed to pay:

"$500.00 in cash when said system has been roughed in, the balance of $1980.00 to be secured by a second mortgage on said premises payable $50.00 per month, all deferred payments to draw interest at the rate of 7% per annum, payable monthly; the first of said payments to be made within ten days after the job has been completed by the party of the second part.

"It being understood and agreed that the party of the first part shall execute and deliver to the party of the second part said note for the balance due under the contract upon demand together with a second mortgage on the premises securing said note, said premises to be free from all encumbrances save and except a first mortgage."

The lien filed recited:

"That the terms on which said material was furnished and labor performed are: as to the heating system $500 in cash when said system had been roughed in; the balance of $1980 payable $50 per month, all deferred payments to draw interest at the rate of seven per cent per annum, payable monthly, secured by a second mortgage on said building and real premises, said real premises to be free of all incumbrances save and except a first mortgage; and as to the $200 contract for extra plumbing, for extra apartment, cash upon completion and the whole sum is now past due."

The answer filed by Nelson Bros., Inc., which sets up the lien and prays for its foreclosure fails to allege any demand for the execution and delivery of the stipulated note and mortgage and does not allege fraud, nor does it contain any prayer for the specific performance of this contract. It alleges that no part of the sum of $2,680 has ever been paid and that the whole of said sum is now due and payable but it does allege that no note or mortgage has ever been given. The validity of this lien is attacked upon two grounds: First, that it is based upon a special contract which extends the time of payment beyond the time allowed by law for the enforcement of a lien and, therefore, constituted a waiver of the right to claim a lien for services performed under it; and second, upon the ground that the lienor is estopped to assert its claim for lien because the Loan Company made the loan and accepted the mortgage in reliance upon the stipulation contained in the contract that the lienor was to accept a second mortgage upon the premises as security for the payment of its claim and not to assert or claim any lien therefor which would or might have priority over its mortgage.

■■ It is settled by *Trullinger v. Kofoed,* 7 Or. 228 (33 Am. Rep. 708), that where a lien claimant takes a

mortgage upon the same or other property as security for his debt, he thereby waives his right to a lien. In that case the court cited among other cases *Barrows v. Baughman,* 9 Mich. 213, where the court, after announcing the principle that a mortgage is "a species of security entirely inconsistent with the idea of a mechanic's lien upon the same land as a security for the same debt," then said:

"* * * the statute creates no lien, where the parties, by their contract, provide for a different security upon the same land for the same debt which the lien would otherwise secure."

In the Trullinger case a mortgage had actually been given while in the instant case, although expressly contracted for, no mortgage has been given. Does this difference of facts affect or change the rule announced in the Trullinger case? We think not.

In *Willison v. Douglas,* 66 Md. 99 (6 Atl. 530), the court, after pointing out that a mechanic's lien is created by statute and that, in the absence of special arrangements to the contrary, parties are presumed to have contracted for work and material, with reference to this law, said:

"* * * But no statute will be so construed as to prohibit the formation of contracts not in conflict with public policy. If, therefore, parties deem it advisable to enter into an agreement inconsistent with the existence of a lien, the statute will not be construed to operate so as to create a lien, and thereby destroy the special contract."

Again, in *Weaver and Pennock v. Demuth,* 49 N. J. Law, 238, the court cites with approval the holding in *Barrows v. Baughman,* supra, and then said:

"The agreement for a particular kind of lien upon the same property, to which the mechanics' lien would

usually attach, must necessarily be exclusive of all other liens. Such must evidently be the purpose when the agreement is made, though they may not state it in express words, and such would be the construction which others, in dealing with the property, would ordinarily put upon it. In legal effect the contractor waives his lien to obtain another in a different form. This he may do if he choose, for this is a statute designed for the benefit of individuals of a particular class, and not for general objects, hence its benefits may be waived. *Quick v. Corlies,* 10 Vroom [39 N. J. Law] 11.

"There are building contracts which stipulate for the payment in money, property, notes or other securities, and all are equally good, and the statutory remedy is available unless by the terms it is excluded. Thus, if notes be given and the credit be extended beyond the time for bringing the action, the remedy by lien is lost, because it is inconsistent with the statute. So, as in this case, if the bargain is made for a specific lien on the same property, another lien for the same debt by statute must be waived, because of its inconsistency. It was conceded, on the argument, that this would be the effect if the contract were executed; but as it is executory, it was contended that the plaintiff may well resort to his remedy under the statute."

In answering this contention, the court said:

"This general rule as to waiver will be ordinarily true, but suppose the builder bargains for a specific lien on the property improved by his labor and material, may he, for any reason excepting fraud, rescind his contract and claim another form of lien, given him by statute? This case, in my judgment, stands on the contract made between the parties, and the remedy for its breach must be sought within and not outside of it. The contractor must obtain the lien promised, or its equivalent in damages, and not the lien by statute which he has constructively agreed to abandon without any condition or reservation."

These principles we think are controlling here. Nelson Bros., Inc., having entered into a special agree-

ment stipulating the manner and time of payment and the security to be given therefor, must abide by its contract. If entitled to relief, the relief must be based upon the stipulation entered into and not upon the statute. It is true that part payment was not made as agreed and that no mortgage was given but, under the terms of the contract, the mortgage was to be given upon demand and no demand was made. Instead of demanding performance, Nelson Bros., Inc., abandoned all parts of the contract, except the stipulated price, and filed a lien therefor, claiming priority in payment over the mortgage of the Loan Company, as to which it had stipulated its mortgage should be a second mortgage. Relying upon the stipulations contained in the special agreement, the Loan Company has changed its position and parted with its property, and, therefore, Nelson Bros., Inc., are estopped from asserting a lien having priority over the mortgage for any part of the labor or material for which it had agreed to accept a second mortgage. As said in *Trullinger v. Kofoed,* supra:

"* * * In these cases of waiver, if it only concerned the immediate parties, it would ordinarily be a matter of little consequence how it was determined. 'But when the acts of individuals become the motive to the conduct of others, it is important that such acts should be made to bear their natural construction, so that deceit and imposition upon third persons may be prevented. And though one of the parties to the transaction is overreached, or was in error as to its consequences, that error can not be remedied at the expense of third persons'."

But it does not follow from this that the lien of Nelson Bros., Inc., is wholly invalid. Of the amount claimed $200 thereof was for labor and material furnished under another contract which was to be paid

for in cash when the work was completed and $500 of the price for the work done under the special agreement was also to be paid for in cash while the work was being performed. Neither of these two sums have been paid and each constitutes an item for which a lien may be claimed. The claim of lien was filed in good faith and obviously under a mistake of law. Both items may be segregated for the balance of the amount claimed without resort to any extrinsic evidence. We, therefore, hold that the lien is valid for the sum of $700 with interest thereon as stipulated at the rate of 7 per cent per annum from the time when said sums were payable and that the lien for said amounts is entitled to priority over the mortgage. For the remainder of the amount due, namely, $1,980 and interest thereon as provided in the contract, Nelson Bros., Inc., are entitled to and will be given judgment but it shall in all respects be subject to the mortgage.

For the reasons stated, the cause will be remanded to the court below with directions to enter a decree foreclosing plaintiff's lien and awarding to plaintiff its costs and disbursements and a reasonable attorney's fee to be fixed from the evidence already offered in the cause; also foreclosing the lien of Nelson Bros., Inc., for the sum of $700 with interest thereon as provided in the contract, and awarding judgment to Nelson Bros., Inc., for the sum of $1,980 with interest thereon as provided in the contract, and directing that the lien of said judgment shall be subject to the lien of the mortgage. Except as so modified, the decree appealed from will be affirmed.

BEAN, C. J., ROSSMAN and KELLY, JJ., concur.