PIERCE, Judge.
In this case the appeal was dismissed on November 4, 1966, for failure of appellant Robert C. Clark, as defendant in the Court below, to pay the filing fee for the Clerk of this Court in addition to filing his notice of appeal with the Clerk of the trial Court within the time provided by F.A.R. 6.4, 32 F.S.A. Clark v. State, Fla.App. 1966, 191 So.2d 870. Thereafter, in Mills v. Avon Park Motor Co., Fla. App.1969, 223 So.2d 802, we receded from the rationale of the Clark dismissal opinion by holding that F.A.R. 3.2(d) governing the method of commencing appeals in civil cases (which is the counterpart of F.A.R. 6.4 governing criminal appeals) was not jurisdictional insofar as it specifies the time within which the appellate Clerk’s filing fee must be deposited. The Supreme Court has recently held to the same effect. City of Gainesville v. Thomas, 229 So.2d 833, opinion filed October 8, 1969.
On August 26, 1969, the United States District Court for the Middle District of Florida, in a habeas corpus proceeding brought by Clark, being apparently of a like view, issued order directing this 2nd District Court to “grant Petitioner appellate review of his conviction within ninety (90) days” therefrom. Certified copy of the Federal Court’s order has been filed here.
It appears that prior to November 4, 1966, the date we filed our original order and opinion dismissing the appeal as afore *879 said, adversary briefs had been filed and oral arguments had before this Court on the merits of the appeal. We are therefore presently in position to accord to appellant Clark his right of “appellate review of his conviction” and determine his appeal on the merits.
On September 20, 1965, Clark was informed against in the Pinellas County Circuit Court for the offense of unlawfully uttering a forged bank check payáble to “Wilson Sport Store”, purportedly signed by “James A. Gillette 3961 46 Ave No ST. Pete, Fla.”, and endorsed on the back thereof the words • “FOR DEPOSIT ONLY WILSON SPORT STORE”, with intent to defraud Jerone Moorefield and Marie K. Moorefield doing business as Wilson Sport Store. Upon plea of not guilty and trial before a jury Clark was found guilty on October 14, 1965 and, motion for new trial being denied, he was on November 24, 1965 adjudged guilty by the Court and sentenced to a term of imprisonment. It is this judgment of conviction that we are now called upon to review.
The facts adduced at the trial presented a relatively simple case. Mr. and Mrs. J. R. Moorefield owned and operated a business in St. Petersburg known as Wilson Sport Store, employing only two persons therein, one Hugh Sullivan and appellant Clark. On August 16, 1965, the Moorefields were in Miami, having left their St. Petersburg store to be operated by Sullivan and Clark, with Sullivan in charge. In such situation, it was Sullivan’s custom, soon after opening the store of a morning to make up his deposit slip covering checks and cash taken in the day before and then take the same to the Union Trust National Bank for deposit. This custom was followed as to the store’s receipts for August 16th.
Several days later, after Mr. Moorefield returned from Miami, he received back from the bank unpaid one of the checks which had been deposited while he was gone. The check was for $15.00 and bore on the signature line the name of James A. Gillette with an address listed of 3961 46th Avenue North, St. Petersburg. The check had been returned by the bank to Moorefield because the bank had no depositor by the name of James A. Gillette. No person by that name was listed in either the St. Petersburg or Tampa City Directories. Also the address indicated on the face of the check proved to be nonexistent. Sullivan remembered the check being among the receipts deposited on the day following its appearance in the lone cash register in the store, but was positive he himself had not taken it in nor placed it in the register. The only other person having access to the cash register was appellant Clark.
Detective Carlyle of the St. Petersburg Police Department testified he arrested Clark on the morning of August 31, 1965, “at the unemployment office on First Avenue North”, for forging the check, and that about an hour later at the Police Station Clark confessed that he had written the check, put it in the cash register, removed $15.00 therefrom in cash; that Sullivan knew nothing of his writing the' check or cashing it, and that the address on the check was “just an address he made up”; that when he was writing out the check in the store he noticed some Gillette Razor Company products on display and thereupon signed the name of Gillette to the check. Detective Carlyle testified the confession was voluntary on Clark’s part, that it was accompanied by full Miranda warnings in advance, and was in the presence of City Detective Rink. The State’s case was undisputed as Clark did not testify nor produce any witness in his behalf.
The sufficiency of the evidence to convict Clark for uttering the forged Gillette check was not challenged in the lower Court nor is it here. Only two points are raised here, both pertaining to admission of evidence, viz: testimony by Robert Paul Miller, assistant head bookkeeper of the drawee Union Trust National Bank, and *880 Clark’s confession at the police station. These points are devoid of merit and we affirm.
Miller testified that a search of the records of the bank revealed there was no account under the name of James A. Gillette, which testimony Clark argues was inadmissible because it was hearsay since Miller had not himself personally checked the records at the bank to determine nonexistence of such account. This is tantamount to saying that, in order to prove such fact, the State would have been obliged to bring in every official, clerk, secretary, bookkeeper, teller and employe of the bank who had any part in the search for the supposed Gillette account and have them testify to its nonexistence. Miller testified that the search of the bank’s records was conducted under his direction and control as the assistant head bookkeeper of the bank. Thus he was in effect custodian of such records and was therefore competent to prove the negative fact in. question.
On the question of the confession, Clark contends it was erroneously admitted before the corpus delicti had been proved. The corpus delicti in a criminal case is made up of two elements, (1) that a crime has been committed, and (2) that some person is criminally responsible for the act. Sciortino v. State, Fla.App.1959, 115 So.2d 93. Translating this formula to the facts of the instant case, it means that the corpus delicti here consisted of proof (1) that a bank check was forged, and (2) that some person knowingly uttered such forged check. Sufficient evidence had been adduced from which the jury could have found these two elements existed at the time the confession evidence was offered and received.
Also, Clark’s argument ignores one established principle of criminal law proof, namely, that it is not inexorably reversible error for the trial Court, in the exercise of its broad discretion, to admit evidence of a confession or admissions against interest prior to the time the corpus delicti is actually established. In Sciortino this 2nd District Court held that—
“ * * * the order of proof in a criminal case is generally within the discretion of the trial court. The error in admitting testimony as to the guilt, before the proof of the corpus delicti, is cured when the subsequent testimony sufficiently establishes the corpus de-licti.”
The corpus delicti may be established by circumstantial evidence and “need not be proved beyond a reasonable doubt, it being enough if the evidence tends to show a crime was committed”. Schneble v. State, Fla.1967, 201 So.2d 881. Also, the confession itself may be considered, together with other testimony, in proving the corpus delicti. Sciortino, supra.
Clark’s contentions as to admissibility of evidence are untenable, and inasmuch as no other points urging reversal have been raised the judgment appealed must be—
Affirmed.
HOBSON, C. J., and LILES, J., concur.